IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND LLOYD,
    *Plaintiff*,

v.

BALTIMORE POLICE DEPARTMENT,
    *Defendant*

Civil Action No.
23-cv-1987-ABA

**MEMORANDUM OPINION**

Plaintiff Sergeant Raymond Lloyd and his former supervisor, Lieutenant Jerome Forrest, both filed cases in this Court represented by the same counsel, the law firm District Legal Group, PLLC ("DLG"), against their employer, the Baltimore Police Department ("BPD"). Lt. Forrest and Sgt. Lloyd raised different claims—Lt. Forrest for race discrimination in 2018-19 in connection with transfers between BPD sections, and Sgt. Lloyd for interference in 2022 with his rights under the Family and Medical Leave Act of 1993 and retaliation. Because Lt. Forrest was Sgt. Lloyd's immediate supervisor, he was involved in the initial decisions surrounding Sgt. Lloyd's medical leave at issue in this case. BPD has moved to disqualify DLG from representing Sgt. Lloyd in light of DLG's prior representation of Lt. Forrest. For the following reasons, the Court will deny the motion.

**FACTS PERTINENT TO MOTION TO DISQUALIFY COUNSEL**

In the *Forrest* case, No. 1:22-CV-03220-JMC (D. Md.), DLG represented Lt. Forrest, filing a complaint in December 2022, and an amended complaint in July 2023. Lt. Forrest, who during his twenty-plus years with BPD spent most of that time with the Internal Affairs Section ("IAS"), alleged that in 2018-19, his supervisors took certain actions he contended were detrimental to his career advancement, in particular a delay in effectuating a transfer to BPD's

Special Operations Section while IAS searched for a replacement, and the handling of a subsequent transfer back to IAS. *Forrest v. Baltimore City, Maryland: Baltimore Police Dep't.*, No. 1:22-CV-03220-JMC, ECF Nos. 1 & 17.

The Court (Judge Coulson) dismissed both complaints in their entirety, concluding that Lt. Forrest's claims were untimely, his § 1983 claim was insufficiently pled, and BPD was shielded from liability under the Maryland Fair Employment Practices Act. *Forrest v. Baltimore City, Maryland: Baltimore Police Dep't*, No. 1:22-CV-03220-JMC, 2023 WL 3847429 (D. Md. June 6, 2023); *Forrest v. Baltimore City, Maryland: Baltimore Police Dep't*, No. 1:22-CV-03220-JMC, 2023 WL 6381449 (D. Md. Sept. 29, 2023). Following the second dismissal, which occurred on September 29, 2023, Lt. Forrest elected not to "pursu[e] an appeal" in his case. Pl.'s Opp., Ex. 1 ¶ 6 (Lewis Affidavit), ECF No. 10-3 ("Lewis Aff."). And Lt. Forrest's time to appeal has since elapsed. *See* F.R.A.P. 4(a)(1)(A) ("[T]he notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment."). DLG also stated that it "will not be pursuing any appeal on behalf of Lt. Forrest" and that it considers Lt. Forrest "a former client." Lewis Aff. ¶¶ 6 & 10.

In July 2023, while DLG was litigating the *Forrest* case, it filed its original complaint in this case, on behalf of Sgt. Lloyd. Whereas the events underlying the *Forrest* case took place in 2018-19, the events underlying Sgt. Lloyd's complaint in this case largely began in July 2022. *See* Amended Complaint, ECF No. 7 ("Am. Compl."), ¶¶ 20-30. Sgt. Lloyd, who was a BPD officer for twenty years until January 1, 2023, alleges that on July 5, 2022, he sought permission, through BPD's human resources software system, Workday, to take a sick day the next day. *Id.* ¶ 20. Lt. Forrest, who as noted above was Sgt. Lloyd's immediate supervisor, contacted Sgt. Lloyd and "indicated that his request was denied and that he should report to work." *Id.* Sgt. Lloyd

2

contends that Lt. Forrest's denial "put [Sgt. Lloyd] in the position of having to explain his PTSD and medical history to justify his leave." *Id.* However, "[u]pon speaking with a Fraternal Order of Police (FOP) representative to understand his rights, Sgt. Lloyd resubmitted the original sick leave request in Workday and it was subsequently approved by Lt. Forrest." *Id.* ¶ 21.

Sgt. Lloyd further alleges that shortly after that sick leave, he submitted a request for FMLA leave on July 14, 2022, and that he "was sent to the Public Safety Infirmary (PSI) by Lt. Forrest for a fitness of duty evaluation, and was then told he would need to see the Department's therapist on August 11, 2022." *Id.* ¶ 23. The request for leave was approved and Sgt. Lloyd was granted "continuous leave" for the period August 1 to September 30, 2022, "due to Sgt. Lloyd's diagnosed PTSD." *Id.* ¶ 25. Sgt. Lloyd alleges that, "[p]ursuant to BPD policy number 1726," BPD was supposed to hold open his prior position in the Northern District's "PIB/Ethics Division," and that the position could only be "forfeited" if he "failed to return by the end of the approved period." *Id.* ¶¶ 25-26. But according to Sgt. Lloyd, before the end of his leave term he was involuntarily transferred to a different position within the Northern District. *Id.* ¶ 26. He further alleges that as a result of the transfer, he "no longer received a clothing allowance," "was not entitled to overtime work," and "was forced into early retirement without the full benefits he would have been entitled to with a later retirement date." *Id.* ¶¶ 29-30. Sgt. Lloyd alleges that his "transfer was decided upon and authorized by BPD's upper management, in particular, by Deputy Commissioner Brian Nadeau." *Id.* ¶ 31.

Sgt. Lloyd alleges that BPD's decision to transfer him, and the concomitant diminution in benefits, constituted retaliation for not only his exercise of his FMLA rights in 2022, but also because he had "previously . . . fil[ed] EEO complaints within the Department [in 2020 and 2021] based on race discrimination, hostile work environment, and retaliation." *Id.* ¶ 32. In

3

connection with these EEO complaints, Sgt. Lloyd alleges that "on one occasion Lt. Forrest and Lt. Sean Mahoney came to Sgt. Lloyd's office and told him that Deputy Commissioner Nadeau had decided that Sgt. Lloyd had 'one more strike' before he would be removed from his position in PIB." *Id.*

Sgt. Lloyd retired effective January 1, 2023. *Id.* ¶ 19. Just before his departure, he filed a complaint with the Wage and Hour Division of the U.S. Department of Labor ("DOL"). *Id.* ¶ 7. He alleges he was later "informed" that DOL had "found the BPD to be in violation of Plaintiff's FMLA rights" but that because Sgt. Lloyd no longer worked for BPD, DOL "could therefore not directly provide remedies for Defendant's violation" and that he should instead "pursue his private right of action for enforcement." *Id.* ¶ 9. He filed his initial complaint in this action on July 24, 2023, and an amended complaint on October 4, 2023. ECF Nos. 1 & 7. In both complaints he asserts two counts: Count 1 for "unlawful interference with an entitlement to FMLA benefits," and Count 2 for retaliation in violation of the FMLA.

Defendants have moved to disqualify DLG from representing Sgt. Lloyd. At bottom, Defendants argue that DLG should not be permitted to represent Sgt. Lloyd in asserting a claim that involves allegations that Lt. Forrest—DLG's former client—violated Sgt. Lloyd's rights under the FMLA and to be free of unlawful retaliation. ECF No. 8 ("Mot."). Sgt. Lloyd, through his counsel at DLG, has opposed the motion. ECF No. 10 ("Opp."). Thereafter, Defendants filed a reply brief and Plaintiff filed a surreply. ECF Nos. 15 & 18.

## DISCUSSION

**1.    Legal Standard**

A motion to disqualify counsel requires a court to strike a "balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in

the legal community." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. 1995) (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). On one hand, "[o]ne of the Court's duties and responsibilities is to ensure that attorneys who appear before it preserve the public's confidence in the judicial system." *Id*. at 303-04 (citations omitted). On the other hand, disqualification is a "drastic remedy" that "deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722 (D. Md. 2004). Moreover, the Maryland Rules of Professional Conduct ("MRPC") "expressly caution that motions to disqualify 'should be viewed with caution . . . for [they] can be misused as a technique for harassment.'" *Id.* at 722-23 (quoting MRPC 1.7).[1] Thus, "[d]isqualification at the urging of opposing counsel is permitted only '[w]here the conflict is such as clearly to call in question the fair and efficient administration of justice.'" *Id.* at 723. The moving party "bear[s] 'a high standard of proof to show that disqualification is warranted.'" *Franklin v. Clark*, 454 F. Supp. 2d 356, 365 (D. Md. 2006).

Defendants' motion is largely premised on Maryland Rule of Professional Conduct 1.7, which concerns concurrent representation of clients. Under Rule 1.7, in the absence of written informed consent, "an attorney shall not represent a client" if "the representation of one client will be directly adverse to another client" or if "there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client." MRPC 1.7(a). Here, however, Lt. Forrest is a former client who did not appeal his case and whom DLG no longer represents. *See, e.g.*, Lewis Aff. ¶¶ 6 & 10. Therefore, the propriety of

---

[1] Pursuant to Local Rule 704, this Court applies the Maryland Rules of Professional Conduct as adopted and interpreted by the Supreme Court of Maryland. Those Rules are codified at Chapter 300 of the Maryland Rules. For simplicity, the Court refers to the rules by the last digits, reflecting the numbering adopted from the ABA Model Rules.

DLG continuing to represent Sgt. Lloyd in this case is informed by Rule 1.9, which applies to conflicts between current and *former* clients.

Under Rule 1.9, DLG may not (1) "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of [Lt. Forrest] unless the former client gives informed consent, confirmed in writing," MRPC 1.9(a), (2) "use information relating to the representation [of Lt. Forrest] to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known," MRPC 1.9(c)(1), or (3) "reveal information relating to the representation [of Lt. Forrest] except as these Rules would permit or require with respect to a client," MRPC 1.9(c)(2).

A motion to disqualify such as this is governed by federal common law. *See* Hazard, *et al.*, *The Law of Lawyering* ("*Law of Lawyering*") §§ 11.13.2 & 14.07 (4th ed.). Those standards, in turn, are deeply informed by the applicable rules of professional conduct. *See id.* § 11.13.2 ("When disqualification of counsel is sought because of a violation of the polices underlying Model Rule 1.7 or 1.9, the motion is not literally brought 'pursuant' to or 'under' those rules, in part because the trial courts to which they are addressed typically do not have jurisdiction over disciplinary matters. Instead, motions to disqualify counsel invoke the inherent power of courts to control the proceedings (and the lawyers) before them, based on common law principles that largely preceded the development of formal codes of professional conduct."); *see also id.* § 14.03 ("Model Rule 1.9 largely codified the law governing disqualification of counsel as it stood in 1983, and both the disciplinary standard and the disqualification standard now continue to develop together, each heavily influencing the other.").

In deciding whether an alleged former-client conflict requires disqualification, courts generally follow "a two-part analysis: first, 'the moving party must establish that an attorney-client relationship existed with the former client,' and second, 'the matter at issue in the former representation [must be] the same or substantially related to that in the current action.'" *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 779 (D. Md. 2008) (quoting *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 610 (D. Md. 2002)). Matters are "substantially related" if either (a) they "involve the same transaction or legal dispute" or (b) "there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9 cmt. 3.[2] Thus, "the court's primary concern" in relation to the substantial-relationship inquiry "is whether there is a 'reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation.'" *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Perlberg*, 819 F. Supp. 2d 449, 455 (D. Md. 2011) (quoting *Stratagene*, 225 F. Supp. 2d at 611).[3]

---

[2] *See also* Restatement (3d) of the Law Governing Lawyers § 132 (2000): "Unless both the affected present and former clients consent to the representation under the limitations and conditions provided in § 122, a lawyer who has represented a client in a matter may not thereafter represent another client in the same or a substantially related matter in which the interests of the former client are materially adverse. The current matter is substantially related to the earlier matter if: (1) the current matter involves the work the lawyer performed for the former client; or (2) there is a substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has become generally known."

[3] There may be some circumstances where even if the subject matter of a former and current matter are not substantially related, a lawyer may have learned privileged or other confidential information in the course of the former representation such that the lawyer's knowledge of that information would bar a subsequent (unrelated) representation materially adverse to the interests of the former client. That is because "a lawyer representing a client in a matter may not use confidential client information if doing so will adversely affect a material interest of the former client, even though that matter is not substantially related to a former representation."

But in addition to the existence of a prior attorney-client relationship, and a substantial relationship between the current and prior matter(s), disqualification generally also requires a showing that the counsel whose disqualification is sought is in fact engaged in a representation *materially adverse* to the interests of the former client. Although cases addressing disqualification motions do not generally articulate "materially adverse" as a separate showing required for disqualification, that is often at least implicit. *See, e.g.*, *Perlberg*, 819 F. Supp. 2d at 455 ("The focus of the substantial-relationship inquiry is 'the factual nexus between the earlier representation and the present, *adverse* representation.'") (emphasis added, quoting *Blumenthal Power Co., Inc. v. Browning–Ferris, Inc.*, 903 F. Supp. 901, 902 (D. Md. 1995)). Common sense dictates that without adverseness, there is generally no violation of Rule 1.9, and disqualification would be inappropriate. *See generally* ABA Comm. on Ethics and Pro. Resp., Formal Op. 497 (2021) (addressing the meaning of material adverseness in the context of former client conflicts, and concluding that in general "materially adverse" requires some "specific tangible direct harm" to the former client, and one that entails "a conflict as to the legal right and duties of the clients, not merely conflicting or competing economic interests") (citation omitted).

Thus, disqualification would only be appropriate here if BPD were to establish that (1) an attorney-client relationship existed between DLG and the former client (here Lt. Forrest); (2) the

---

Restatement (3d) of the Law Governing Lawyers § 132 cmt. a (2000). In other words, the substantial relationship test focuses on confidential factual information "as would *normally* have been obtained"—and thus in a sense presumes that a lawyer only obtains confidential factual information from clients related to the subject matter of a representation. But some even unrelated subsequent representations would put a lawyer in a position to "use" confidential information learned from the former client, to that former client's disadvantage, thereby potentially requiring disqualification. *See id.* Here, however, the Court need not resolve how such a showing would be made (of disqualification in the absence of a substantial factual relationship between matters) because, as discussed below, not only are the *Forrest* and *Lloyd* matters not substantially related, but BPD has not shown that DLG's representation of Sgt. Lloyd is "materially adverse" to Lt. Forrest's interests.

8

first case (Lt. Forrest's) and the second case (Sgt. Lloyd's) are the same or "substantially related" under the standards set forth above; and (3) Lt. Forrest's and Sgt. Lloyd's interests are "materially adverse." *See* MRPC 1.9(a); *Nichols Agency,* 537 F. Supp. 2d at 779; *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 551–52 (D. Md. 2008); *Gross*, 307 F. Supp. 2d at 723. There is no dispute that DLG represented Lt. Forrest in the *Forrest* case. Thus, BPD's motion turns on whether the two cases are substantially related, and whether Lt. Forrest's and Sgt. Lloyd's interests are materially adverse.

**2.     The *Forrest* and *Lloyd* matters are not substantially related**

Lt. Forrest's case and Sgt. Lloyd's cases are not substantially related. As noted above, two matters are substantially related "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MRPC 1.9 cmt. 3.[4] "'Substantially related' has [also] been interpreted to mean 'identical' or 'essentially the same,'" "or 'factually related.'" *Nichols Agency*, 537 F. Supp. 2d at 779 (quoting *Tessier*, 731 F. Supp. at 730, and *Blumenthal Power*, 903 F. Supp. at 902). The focus of the test is "the factual nexus between the earlier representation and the present, adverse representation." *Blumenthal Power*, 903 F. Supp. at 902. However, "[i]n order to show a substantial relationship, 'it is not necessary that two lawsuits involve the same operative facts, so

---

[4]     Confidentiality is a broader concept than privilege. "A fundamental principle in the client-attorney relationship is that, in the absence of the client's informed consent, the attorney must not reveal information *relating to the representation*." MRPC 1.6 cmt. 2 (emphasis added). Information "relating to the representation" includes—but, crucially, is not limited to—information protected by the attorney-client privilege. *See* MRPC 1.6 cmt. 3 ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.").

long as there is a sufficient similarity of issue.'" *Buckley*, 908 F. Supp. at 304 (quoting *Avnet, Inc. v. OEC Corp.*, 498 F. Supp. 818, 820 (N.D. Ga. 1980)).

BPD argues the two cases are substantially related because BPD is the defendant in both cases, both cases involve employment law, and because Sgt. Lloyd alleges that Lt. Forrest was his direct supervisor and that Lt. Forrest first denied the initial leave request at issue (and then approved it). *See* Mot. at 8-9. But Sgt. Lloyd alleges claims under the FMLA while Lt. Forrest alleged racial discrimination, and the salient facts of the two cases do not materially overlap, and in fact occurred years apart. Moreover, Sgt. Lloyd's ultimate allegations are based on actions by BPD's upper management, not Lt. Forrest. Am. Compl. ¶ 31. Likewise, Sgt. Lloyd is only mentioned once in Lt. Forrest's amended complaint, in the context of a discussion between the two officers and upper management about whether Sgt. Lloyd could serve as Lt. Forrest's replacement in order to facilitate Lt. Forrest's transfer. *See* 22-CV-03220-JMC, ECF No. 17 ¶ 34. The two cases simply do not involve the same transaction or legal dispute. Instead, they involve different claims and time periods, and Lt. Forrest and Sgt. Lloyd do not play a significant role in each other's cases. Although the two plaintiffs appear as part of the background facts in each other's complaints, the ultimate claims made by both plaintiffs are not significantly advanced by those facts. In relation to Sgt. Lloyd's case, Lt. Forrest is necessarily involved as Sgt. Lloyd's supervisor, but Lt. Forrest's actions are not part of Sgt. Lloyd's claims that upper management retaliated against him by transferring him because of his allegedly protected actions. The two cases are not "essentially the same," *see Nichols Agency*, 537 F. Supp. 2d at 779, and instead are separate actions relying on largely unrelated facts.

For the same reasons, the Court concludes there is no "substantial risk" that confidential information "as would normally have been obtained" by DLG in the course of representing Lt.

Forrest would "materially advance" Sgt. Lloyd's case or be used to Lt. Forrest's disadvantage. MRPC 1.9 cmt. 3; *see also id.* 1.9(c). The question is not whether Lt. Forrest *did* share information in the course of the prior representation that would put DLG in a position of using or disclosing such information in this case; addressing *that* question would risk intruding on Lt. Forrest's prior attorney-client relationship with DLG. *See, e.g.*, *Buckley*, 908 F. Supp. at 306 ("[N]o actual receipt of confidences must be shown; such a standard would place an unreasonable burden on the moving party."). Rather, as discussed above, the question is whether, given "the nature and scope of the prior and present representations," confidences or other information "*might* have been disclosed in the course of the prior representation which could be relevant to the present action." *Victors*, 553 F. Supp. 2d at 552 (quoting *Stratagene*, 225 F. Supp. 2d at 611) (emphasis added).

      Here, given the many differences between the two cases discussed above, BPD has not made such a showing. Although Lt. Forrest is named in Sgt. Lloyd's complaint, his presence merely establishes the facts that led to the conduct that Sgt. Lloyd alleges is actionable: his transfer. Am. Compl. ¶ 31. Sgt. Lloyd's amended complaint alleges that the decision to transfer him was made by BPD's upper management, not Lt. Forrest. *Id.* Indeed, Sgt. Lloyd argues that the transfer order "would be beyond Lt. Forrest's authority." Opp. at 6. And although BPD makes much of the fact that, after BPD raised the potential conflict, Sgt. Lloyd amended his complaint to remove an express allegation that Sgt. Lloyd's 2020 and 2021 EEO complaints "involved or were reported to Lt. Forrest as Sgt. Lloyd's supervisor," *see* Mot. at 15; *see also* ECF No. 7-1 (redline of amended complaint) at 7 ¶ 32, that does not render the two cases substantially related, for the reasons explained above.

BPD further argues that even if the *Forrest* and *Lloyd* cases were not substantially related, "the result should be the same" because Lloyd's counsel in this case may need to "propound discovery questions on BPD (which would require input from Forrest), to note the deposition of Forrest, or to otherwise examine or cross-examine Forrest as a trial witness, related to Lloyd's allegations." Mot. at 9 & n.6. The possibility that Forrest could become a hostile witness, whom DLG would need to examine (at deposition) or cross-examine (at trial) as such, does give the Court pause. *See, e.g.*, ABA Comm. on Ethics and Pro. Resp., Formal Op. 497 at 7 ("[E]ven if a lawyer ethically can use the information or does not need to use information, the lawyer still may have a conflict of interest in examining a former client under Rule 1.9(a) if the former client's interests are 'materially adverse' to the current client and the current matter is substantially related to the prior matter."). But the Rules commentary BPD relies on pertains to concurrent conflicts, not former client conflicts. *See* Mot. at 9 (citing MPRC 1.7 cmt. 5). Because the Court finds that the two matters are not substantially related, there is no "reasonable probability that confidences" (*i.e.*, privileged information), or other non-privileged but confidential "information relating to the representation," *see* n.4, *supra* (discussing MRPC 1.6), "were disclosed in the prior representation which could be used against the former client in the current litigation." *See Victors*, 553 F. Supp. 2d at 552 (quoting *Stratagene*, 225 F. Supp. 2d at 610).[5]

---

[5]   In its opening motion, BPD also argued that DLG should be disqualified because, after Sgt. Lloyd's complaint was filed, DLG—which was still representing Lt. Forrest at that time—insisted that it be present for any interview by BPD of Lt. Forrest about Sgt. Lloyd's claims. *See* Mot. at 14 (citing correspondence). That request suggests that Lt. Forrest may have requested that DLG represent him in connection with Sgt. Lloyd's claim and/or an investigation thereof (if one were to be initiated), and that DLG may have considered agreeing to expand the scope of its representation of Lt. Forrest accordingly. If DLG had represented Lt. Forrest in connection with Sgt. Lloyd's FMLA claim, that could very well have required DLG's disqualification, because the two "matters" pertinent to *that* analysis would have been *the same* matter. But DLG quickly

For these reasons, BPD has not established that the two cases are "essentially the same" or that "confidential information which is assumed to have been shared in the previous representation could be used to the detriment of the former client in the current proceeding." *Nichols Agency*, 537 F. Supp. 2d at 779-80.

3.  **DLG's representation of Sgt. Lloyd is not materially adverse to Lt. Forrest's interests**

But even if the two cases were substantially related, BPD also has not shown that the interests of Sgt. Lloyd and Lt. Forrest are "materially adverse" within the meaning of Rule 1.9.

In a more typical circumstance where one party has moved to disqualify opposing counsel, the counsel whose disqualification is sought previously represented *the moving party*. *See, e.g.*, *Buckley*, 908 F. Supp. at 301 (defense counsel Stone had previously represented plaintiff in patent infringement actions, actions that involved the same patent at issue). Here, DLG has not represented BPD, but rather represented Lt. Forrest, who works for BPD. Thus, in addition to having to show that the two matters are substantially related (which they are not, as discussed above), to obtain disqualification BPD would have to show that the interests of Sgt. Lloyd "are materially adverse to the interests *of the former client*," *i.e.*, to the interests of Lt. Forrest, not just to the interests of BPD. MRPC 1.9(a).

BPD attempts to depict Lt. Forrest as the main antagonist in Sgt. Lloyd's case. *See, e.g.*, Mot. at 8 ("[O]ne suit alleges that the other plaintiff is the tortious employer responsible for their

---

rescinded that request. *See* Opp. at 9 ("[C]ounsel for Plaintiff no longer holds this position, and Lt. Forrest does not request that any representatives of DLG be present for any such conversations with Defendant or Defendant's representatives."). That suggests that no attorney-client relationship was formed between DLG and Lt. Forrest with respect to the Lloyd FMLA matter. And BPD, which bears the burden of proof on its disqualification motion, has not proffered any other evidence that the scope of DLG's representation of Lt. Forrest included the Lloyd FMLA matter.

13

injuries."); *id.* at 9 ("Lloyd alleges that Forrest is the BPD supervisor who violated the law."). The Court disagrees. As stated above, although Lt. Forrest appears as part of the factual narrative in Sgt. Lloyd's amended complaint, the injury for which Sgt. Lloyd seeks redress—his transfer—was allegedly caused by the decision of BPD's upper management, which did not include Lt. Forrest.

BPD also argues that even if Lt. Forrest were not directly implicated in Sgt. Lloyd's complaint, "the filing of Plaintiff Lloyd's action has or will lead to an adverse action toward Forrest, namely an internal affairs investigation into the allegation that he violated BPD Policy and FMLA." Mot. at 12. *See also id.* ("Because Lloyd's Complaint alleges that Lt. Forrest violated both federal law and BPD policy, Policy 302 [ECF No. 8-2] states that the alleged acts of misconduct by Forrest are *required* to be investigated.") (emphasis added). In his response, however, Sgt. Lloyd asserts that he "amended his Complaint for the specific purpose of making clear that he is not alleging that Lt. Forrest violated federal law and/or BPD policy, but rather that the decision to order his transfer was made by BPD's upper management, including but not limited to Deputy Commissioner Brian Nadeau." Opp. at 7.

And in any event, even considering the allegations as set forth in the original complaint, BPD has not shown any actual likelihood that Lt. Forrest's conduct pertinent to Sgt. Lloyd's FMLA claims in fact puts Lt. Forrest at risk of disciplinary or other adverse action. Contrary to BPD's suggestion, neither Policy 302 nor Policy 308 "require[s]" any investigation or supports the notion that Lt. Forrest "has or will" face "adverse action." *Cf.* Mot. at 12. The "Internal Investigation and Reporting of Misconduct" section of Policy 302, which BPD relies upon, speaks to the obligations of members of the Department to report acts of "misconduct," as well as obligations to cooperate where an internal investigation has commenced. ECF No. 8-2 at 11.

14

And Policy 308 speaks to disciplinary processes generally, including where an investigation determines that "alleged misconduct did occur." ECF No. 8-3 at 2-3. At no time has BPD represented that it in fact has opened an internal investigation into Lt. Forrest's conduct in connection with Sgt. Lloyd's FMLA claims. BPD's suggestion that the interests of Lt. Forrest and Sgt. Lloyd are "materially adverse" because of the mere possibility of an investigation and discipline of Lt. Forrest in connection with Sgt. Lloyd's claims is purely speculative. *See Advanced Training Grp. Worldwide, Inc. v. Proactive Techs. Inc.*, 436 F. Supp. 3d 870, 874 (E.D. Va. 2020) ("Disqualification of counsel is warranted when the conflict of interest is not just conjectural, but is actual or likely.").

For these reasons, the Court also concludes that Lt. Forrest's interests in connection with his closed case and Sgt. Lloyd's interests in his case are not materially adverse.

## CONCLUSION

Under the circumstances presented, and given the high burden to justify disqualification, BPD has failed to establish that there is a substantial relationship between Lt. Forrest's and Sgt. Lloyd's cases or that their interests are materially adverse, let alone that any such conflict "is such as clearly to call in question the fair and efficient administration of justice," *Gross*, 307 F. Supp. 2d at 723. BPD's motion to disqualify Sgt. Lloyd's counsel is denied.

An appropriate order follows.

Date: April 4, 2024                                      /s/
                                                   Adam B. Abelson
                                                   United States Magistrate Judge