IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND LLOYD,
    *Plaintiff*,

v.

BALTIMORE POLICE DEPARTMENT,
    *Defendant*

Civil Action No.
23-cv-1987-ABA

**MEMORANDUM OPINION AND ORDER**

Plaintiff Raymond Lloyd worked for the Baltimore Police Department ("BPD" or "Defendant"). Lloyd contends that after he requested leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, BPD put him on medical suspension and then transferred him to another position while on leave. Lloyd has filed this suit alleging that BPD's actions violated FMLA. BPD has filed a motion to dismiss the complaint. No hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court will deny the motion.

**I.    FACTS[1]**

Lloyd was a Sergeant with BPD for twenty years until his retirement on January 1, 2023. ECF No. 7 ¶ 19 ("Am. Compl."). On July 5, 2022, Lloyd applied for a sick day for July 6, 2022, through BPD's human resources software system, Workday, due to PTSD. *Id.* ¶ 20. His first-line supervisor, Lt. Forrest, initially denied his request, but then ultimately approved the request that day. *Id.* ¶¶ 20-21. Lloyd then put in a second sick day request for July 7, 2022, and returned to work on July 8, 2022. *Id.* ¶ 22. On July 14, 2024, Lloyd "submit[ted] his paperwork for FMLA

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

leave." *Id.* ¶ 23. BPD then "medically suspended" Lloyd on July 26, 2022. *Id.* ¶ 23. It is not clear what the terms of the suspension were or how long it lasted. Lloyd alleges that on July 19, 2022, after he had submitted his FLSA leave paperwork, but before he was medically suspended,

> Deputy Commissioner Brian Nadeau entered Plaintiff's office unannounced and asked Plaintiff to pull up and print a copy of BPD Policy 1705, which is Defendant's policy regarding transfers, details, and filling vacancies. Typically, Deputy Commissioner Nadeau would communicate any requests or communications to Plaintiff through Lt. Forrest, so Plaintiff was unsure why Nadeau had chosen to approach him directly so soon after his leave request had been submitted, or why he asked Sgt. Lloyd to print a copy of a policy for him which he already had access to.

*Id.* ¶ 24. On August 3, 2022, Lloyd's request for continuous leave under the BPD Family and Medical Leave policy was approved for the period August 1 through September 30, 2022 due to Lloyd's PTSD. *Id.* ¶ 25. While it is not clear from the amended complaint, the Court assumes this is the same leave Lloyd requested on July 14, 2024. According to Lloyd, "[p]ursuant to BPD policy number 1726, during FMLA leave Sgt. Lloyd's position was to be held open for him, and only forfeited if he failed to return by the end of the approved period." *Id.* ¶ 24.

On August 10, 2022, while Sgt. Lloyd was on leave, he was notified that he would be transferred from the PIB/Ethics Division to the Northern District. *Id.* ¶ 26. On August 17, 2022, he was informed that the transfer would be effective the next day. *Id.* Lloyd contends that Deputy Commissioner Nadeau and BPD's upper management implemented the transfer. *Id.* ¶ 31. According to Lloyd, "BPD Policy 1726 states: 'At the end of FMLA leave, the member will be restored to the same position held prior to leave or a position with equivalent pay, status, benefits and other employment terms, subject to certain exceptions.'" *Id.* ¶ 26. Lloyd asserts that "[b]y involuntarily transferring Sgt. Lloyd while he was still on medical leave, BPD violated Sgt. Lloyd's rights under the FMLA and FLSA" (though he has not brought claims under the Fair

Labor Standards Act). *Id.* ¶ 28. Lloyd contends that the transfer resulted in a change in his working hours, the loss of his clothing allowance, and that he was "not entitled to overtime work due to his medical suspension." *Id.* ¶ 29. Lloyd asserts that the undesirable transfer "forced" him into early retirement without full benefits, effective January 1, 2023. *Id.* ¶¶ 19 & 30.

Lloyd alleges that previously, in 2020 and 2021, he had filed race discrimination, hostile work environment, and retaliation claims against BPD and that, before his "FMLA Issues began in July 2022," Lt. Forrest (Lloyd's supervisor) and another lieutenant "told him that Deputy Commissioner Nadeau had decided that Sgt. Lloyd had 'one more strike' before he would be removed from his position in PIB." *Id.* ¶ 32.

Lloyd filed his complaint on July 24, 2023, and an amended complaint on October 4, 2023, in which he claims that being placed on medical leave and his involuntary transfer interfered with his use of FMLA leave and were in retaliation for using FMLA leave. *Id.* ¶¶ 33-35. BPD filed a motion to dismiss the amended complaint, ECF No. 25 ("Mot.") to which Lloyd filed an opposition brief, ECF No. 28-1 ("Opp.") and BPD filed a reply brief, ECF No. 29 ("Reply").

II.     **LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief.

*Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

### III. ANALYSIS[2]

#### A. FMLA Interference Claim

BPD argues that Lloyd has failed to make out an FMLA interference claim. To state such a claim, "an employee must [ ] demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Interference includes not just denial of leave, "but discouraging an employee from using such leave." *Id.* (quoting 29 C.F.R. § 825.220(b)).

BPD first contends that because Lloyd was granted the leave he requested, even though he did not provide the necessary notice before applying for the leave, he cannot show

---

[2] In addition to the arguments analyzed below, BPD raises several arguments that are not disputed by Lloyd or do not impact the Court's analysis of Lloyd's FMLA claims. BPD argues that Lloyd's prior EEO complaints and allegations of race discrimination are not legally relevant to Lloyd's current FMLA complaints. Mot. at 5. The Court agrees except to the extent they provide background for the allegation that Lloyd was told that "Deputy Commissioner Nadeau had decided that Sgt. Lloyd had 'one more strike' before he would be removed from his position in PIB," and that that alleged strike ended up being Lloyd's use of FMLA leave. Am. Compl. ¶ 32. BPD also argues that Lloyd is estopped from arguing that any of Lt. Forrest's actions, or the initial denial of leave, were unlawful. Mot. at 7-9. As this Court noted previously when denying BPD's motion to disqualify Lloyd's counsel, Lloyd has already confirmed that "he is not alleging that Lt. Forrest violated federal law and/or BPD policy, but rather that the decision to order his transfer was made by BPD's upper management, including but not limited to Deputy Commissioner Brian Nadeau." *Lloyd v. Baltimore Police Dep't*, No. 23-CV-1987-ABA, 2024 WL 1465700, at *6 (D. Md. Apr. 4, 2024) (quoting Plaintiff's opposition to the motion to

interference. *See* Mot. at 5 (arguing for dismissal of the interference claim because "Plaintiff was not denied FMLA leave"). Lloyd responds that he is not alleging that the initial denial was a violation of FMLA but, instead, that BPD interfered with his FMLA rights by placing him on medical suspension and then involuntarily transferring him while on leave. Opp. at 4 (citing Am. Compl. at ¶¶ 23, 28). BPD responds that Lloyd's amended complaint does not allege that his medical suspension is a basis for his FMLA claims and that Lloyd cannot now supplement his pleadings via his opposition brief. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").

Lloyd has stated an interference claim by virtue of his allegation that during his FMLA leave BPD implemented an involuntary and allegedly detrimental transfer. As part of his interference claim, Lloyd contends that BPD violated FMLA by not "restor[ing]" him to his position in the PIB/Ethics Division upon his return from FMLA leave. *See* Compl. ¶¶ 26-27. One of FMLA's "prescriptive" rights, *see Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006), is the right of employees who take FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment," 29 U.S.C. § 2614(a)(1)(A)-(B), so long as the employee "would have been entitled" to continue in that same or equivalent position "had the employee not taken the leave," *id.* § 2614(a)(3)(B). This "limited" restoration right, *see Hannah P. v. Haines*, 80 F.4th 236, 243 (4th Cir. 2023), appears to be the basis for BPD's Policy 1726, quoted above.

---

disqualify, ECF No. 10 at 7). It is clear that Lloyd is not arguing any violations based on Lt. Forrest's initial denial of leave.

FMLA's restoration rights are enforced through an interference claim. *See id.* at 243-44 (explaining that FMLA "secures" "'leave and restoration rights'" through the prohibition on interference with rights secured by FMLA).

Here, Lloyd has alleged that (a) during his leave he was transferred from PIB/Ethics to the Northern District, (b) the transfer was involuntary, as he had "desire[d] to return to his position in the PIB/Ethics Division," Compl. ¶ 27, and (c) in addition to being what he considered a change to a less desirable job, and a "change to his scheduled hours," the transfer resulted in a "loss of clothing allowance" and an "inability to work overtime," *id.* ¶ 1, and thus caused 'financial . . . harm," *id.* ¶ 30. The Supreme Court has instructed that, at least in the Title VII context, a job transfer can give rise to a discrimination claim whenever the transfer entails any "harm respecting an identifiable term or condition of employment," even where, for example, "rank and pay remain[] the same." *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354, 359 (2024). Of course, BPD "can avoid liability under the FMLA" with respect to the transfer to the Northern District if it can prove that it would have transferred Lloyd even if he had "not been on FMLA leave.'" *See Yashenko*, 446 F.3d at 547 (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). But that issue cannot be resolved at the pleadings stage, and must await factual development and dispositive motions. Thus, with respect to the "restoration" prong of Lloyd's interference claim, he has stated a claim on which relief can be granted.

In addition to the transfer (and concomitant alleged harm), Lloyd contends that BPD engaged in unlawful interference within the meaning of the FMLA by placing him on medical suspension. While not as robust as his claims regarding the transfer, *see* Am. Compl. ¶¶ 1, 12, 26-29, 41, 42, 47, 48, Lloyd does allege that he was medically suspended shortly after he

engaged in a protected activity (submission of his FMLA paperwork), *id.* ¶ 23, and that, "[a]s a result" of BPD's actions, and due to the medical suspension, he was no longer entitled to overtime work, *id.* ¶ 29. Taking all factual allegations as true and reasonable inferences in the light most favorable to Lloyd, as the Court must, *see King*, 825 F.3d at 212, the Court concludes that the amended complaint "allows the court to draw the reasonable inference" that the bases for Lloyd's FMLA interference claim include not just his involuntary transfer but also his medical suspension. *See Iqbal*, 556 U.S. at 678. Moreover, Lloyd has adequately alleged that medically suspending him—in addition to involuntarily transferring him—could have discouraged Lloyd from using his leave. *See* 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" including "[c]hanging the essential functions of the job in order to preclude the taking of leave").

In short, Lloyd has adequately alleged the elements of an FMLA interference claim. The ultimate disposition of whether Lloyd could reasonably have been discouraged from using his FMLA leave due to his medical suspension and/or transfer require factual development and will be more appropriately addressed in the context of dispositive motions. For these reasons, BPD's motion as to Count I of the amended complaint, for FMLA interference, will be denied.

### B. FMLA Retaliation Claim

BPD argues that Lloyd's FMLA retaliation claim fails because he cannot show an adverse action and he has failed to establish causation. "Retaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams*, 789 F.3d at 429. A "[p]laintiff must prove three elements to establish a prima facie case of retaliation: (1) 'she engaged in a protected activity'; (2) 'her employer took an adverse employment action against her'; and (3)

7

'there was a causal link between the two events.'" *Id.* (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc)). But "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *1 (4th Cir. Sept. 8, 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). "Thus, a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss" in the context of a retaliation claim under Title VII (or, therefore, under the FMLA). *Id.* (citing *Bing v. Brivo Sys. LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020)). While not generally relevant at the pleadings stage, after a prima facie retaliation case is established, "[i]f the defendant advances a lawful explanation for the alleged retaliatory action, the plaintiff must demonstrate that the defendant's reason for taking the adverse employment action was pretextual." *Adams*, 789 F.3d at 429.

As to Lloyd's retaliation claim, BPD first argues that Lloyd has failed to identify an adverse action. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). To prove that an employment action was adverse, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from'" using FMLA leave. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).

BPD argues that although Lloyd alleges four adverse employment actions—that he was transferred, lost overtime opportunities, no longer received a clothing allowance, and was forced into early retirement—none are truly adverse. Mot. at 10. But as discussed above, at minimum

his allegations regarding the transfer out of the PIB/Ethics Division—accepted as true and with all inferences drawn in Lloyd's favor—allege action sufficiently adverse to "dissuade a reasonable worker from making or supporting a charge of discrimination." *See White*, 548 U.S. at 57. Moreover, Lloyd also has adequately alleged that being placed on medical leave was an adverse action. BPD's argument that Lloyd's alleged loss of overtime is not an adverse action is largely based on its contention that the medical suspension is not part of Lloyd's FMLA claim; as discussed above, however, Lloyd does allege that BPD medically suspended him because of his FMLA-related activity, and that the medical suspension is the sole reason he asserted that he was not entitled to overtime. *See* Am. Compl. ¶ 29.[3]

Lloyd does not respond to BPD's other arguments regarding the four alleged adverse actions, and BPD argues that Lloyd has therefore waived any opposition to those arguments. But Lloyd does contest BPD's general argument that he has failed to allege an adverse action, arguing that he "has alleged that he had suffered adverse employment action when he was placed on medical suspension—12 days after submitting his FMLA leave paperwork—and involuntarily transferred to another position while still on FMLA leave." Opp. at 6 (citing Am. Compl. ¶¶ 23, 26-27). Thus, the Court sees no need to determine whether Lloyd waived opposition to BPD's arguments specific to particular alleged adverse actions for the purposes of this motion to

---

[3] BPD also argues that "officers on Medical Leave are not prohibited from working overtime, it simply must be preapproved." Reply at 9 (citing ECF 25-2, at 6, BPD Policy 1713). Given that Lloyd did not cite to or attach Policy 1713 to his amended complaint, the Court concludes that this argument goes beyond the allegations in the amended complaint and is inappropriate to consider on a motion to dismiss.

dismiss. Taking all factual allegations as true and all reasonable inferences in Lloyd's favor, Lloyd has sufficiently alleged at least one adverse employment action.

Next, BPD argues that Lloyd has failed to establish a causal connection between his use of FMLA leave and his transfer because he has failed to allege that anyone involved in his transfer knew of his prior FMLA leave and had retaliatory intent.[4] But "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017); *Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'") (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Lloyd was placed on medical suspension about nineteen days after submitting his initial leave requests and twelve days after he "submit[ted] his paperwork for [extended] FMLA leave." Am. Compl. ¶ 23. Lloyd also received notice that he was being transferred one week after his two-month leave was approved (which was effective eight days after that). *Id.* ¶¶ 25-26. Such a period is well within the time frame found to establish causation in connection with a prima facie case, at least at the pleadings stage. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding a span of "two months and two weeks" between the protected activity and adverse action "weaken[ed] significantly the inference of causation between the two events" but that it

---

[4] BPD also argues that the real reason Lloyd was transferred was because of poor work performance. Lloyd does mention in the amended complaint that his predecessor had left Lloyd with a backlog of work for which Lloyd was blamed. Am. Compl. ¶ 32. However, the Court concludes that BPD's argument that the true reason for Lloyd's transfer was his poor work performance goes beyond the allegations in the amended complaint and is better suited for summary judgment.

did "not undercut the inference of causation enough to render [plaintiff's] prima facie claim unsuccessful"). Moreover, taking all reasonable inferences in Lloyd's favor, he adequately alleges that Deputy Commissioner Nadeau knew of his FMLA activity and transferred him because of it. Am. Compl. ¶ 24 (asserting that a few days after Lloyd submitted his FMLA leave request, Deputy Commissioner Nadeau had him print a copy of the BPD policy on transfers, which was atypical behavior). Contrary to BPD's argument, Lloyd also alleged retaliatory intent. *Id.* ¶¶ 47-49 (alleging that there is a causal connection between Lloyd's protected activity of seeking FMLA leave and his involuntary transfer, which he alleges is "the retaliatory misconduct" of BPD). As a result, the Court rejects BPD's argument that Lloyd failed to establish sufficient causation to overcome a motion to dismiss the claim of FMLA retaliation.

The Court concludes that Lloyd has sufficiently alleged at least one adverse action and causation through the temporal proximity between Lloyd's protected activities and the alleged adverse actions. Therefore, BPD's motion as to Count II of the amended complaint for FMLA retaliation will be denied.

### IV.   CONCLUSION

For the reasons stated, BPD's motion to dismiss (ECF No. 25) is denied.

Date: September 20, 2024                        /s/
                                                    Adam B. Abelson
                                                    United States District Judge